IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMERICAN TELECASTING OF SANTA ROSA, INC.<br><br>and<br><br>AMERICAN TELECASTING, INC.<br><br>Plaintiffs,<br><br>v.<br><br>NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,<br><br>Defendant. | Case No. CA 07 467 ML |

## VERIFIED COMPLAINT

Plaintiffs American Telecasting of Santa Rosa, Inc. and American Telecasting, Inc. (collectively, "Lessees") state and allege the following for their Complaint against North American Catholic Educational Programming Foundation, Inc. ("NACEPF").

## NATURE OF THE CASE

Lessees are parties to certain written lease agreements with NACEPF (the "Lease Agreements") for the lease of excess capacity "spectrum rights" - radio frequencies used for the transmission of sound, data, and video. The Federal Communications Commission ("FCC") is responsible for administering and allocating spectrum rights. The FCC has allocated a portion of the 2.5 GHz band of spectrum, known as Educational Broadband Service, or "EBS," for licenses issued to educational institutions and certain not-for-profit entities like NACEPF.

Commercial operators like Lessees must purchase or lease particular spectrum rights in a given market to provide wireless services that will be free from interference and otherwise

appropriate for commercial operations. Licensed spectrum is finite within the 2.5 GHz band and the FCC has already licensed nearly all available EBS spectrum in each market. As a consequence, licensed spectrum rights are unique and have significant value to wireless commercial operators like Lessees.

Lessees leased spectrum rights from NACEPF in Santa Rosa, California and Bradenton, Florida. Under the Lease Agreements, NACEPF granted to each Lessee a right of first refusal ("ROFR") with respect to competing proposals NACEPF receives to lease the spectrum rights until twelve months following the termination of each lease. The terms of the Lease Agreements expired on August 13, 2007 and October 27, 2007. NACEPF gave Lessees notice in which it represented it had received competing offers, triggering Lessees' ROFRs under the Lease Agreements. Lessees elected to exercise their ROFRs by written notice on December 6, 2007 to lease the spectrum rights.

NACEPF has improperly refused to recognize Lessees' exercise of their ROFRs, claiming Lessees' elections are ineffective because their offers do not, in NACEPF's view, meet the terms and conditions of the competing offers. NACEPF also has disputed Lessees' valuation of certain non-cash consideration made in the competing proposals. NACEPF has communicated its intention to proceed to consummate the competing transactions in seven days (December 20, 2007) unless Lessees meet certain conditions mandated by NACEPF but which are not required under the Lease Agreements.

Lessees file the present action seeking declaratory relief that their notices electing to exercise their ROFRs were effective and proper under the terms of the Lease Agreements, that Lessees' ROFRs remain open until five days after Lessees are notified by an arbitrator of the determination, and that NACEPF is not entitled to consummate the competing transactions.

Lessees seek injunctive relief enjoining NACEPF from consummating the competing transactions in contravention of the explicit terms of the Lease Agreements. Lessees further seek to compel NACEPF to proceed in accordance with the arbitration provisions under the Lease Agreements to resolve any disputed issues concerning whether Lessees' stated offers are in an amount fairly equivalent to the cash and non-cash value of the consideration payable under the competing offers.

## THE PARTIES

1. American Telecasting of Santa Rosa, Inc. is (and was at all times hereinafter mentioned) a Delaware corporation with executive offices in Virginia and operational offices in Kansas.

2. American Telecasting, Inc. is (and was at all times hereinafter mentioned) a Delaware corporation with executive offices in Virginia and operational offices in Kansas.

3. Upon information and belief, NACEPF is a Rhode Island corporation with a principal place of business at 2419 Hartford Avenue, Johnston, Rhode Island 02919.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1), as this civil action pertains to parties of diverse citizenship, and each of the ROFRs of each Lessee at issue in this action are valued in excess of $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1), as NACEPF is a resident of this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

**Spectrum—Radio Frequencies Used for the Transmission of Sound, Data, and Video**

6. "Spectrum" refers to radio frequencies used for the transmission of sound, data and video. The FCC is responsible for administering and allocating spectrum rights.

7. The FCC rules allow certain spectrum to be used by the general public on a non-exclusive basis pursuant to certain parameters without the need for obtaining a specific license. Such spectrum rights are generally referred to as "unlicensed spectrum."

8. With respect to other spectrum, the FCC grants a specific party the right to use that spectrum on an exclusive basis within a given geographic area pursuant to parameters established by the FCC. Such spectrum rights are generally referred to as "licensed spectrum."

9. Providers of telecommunications services, like Lessees, prefer to use licensed spectrum in deployment of wireless services because the accompanying exclusivity permits the use of such spectrum free from interference from other spectrum users, thereby promoting a reliable wireless service offering to customers.

10. The "2.5 GHz band" refers to licensed spectrum authorized by the FCC between the frequencies of 2495 MHz and 2690 MHz. The general practice of the FCC is to authorize a maximum of 33 channels in the 2.5 GHz band in any given market. In general, a license for a spectrum in the 2.5 GHz band consists of the right to use a four channel group, commonly known as the A Group, B Group, C Group, D Group, E Group, F Group and G Group. The remaining five channels are allocated to the H Group (three channels) and to two channels known as BRS1 and BRS2.

11. The FCC has allocated a portion of the 2.5 GHz band, known as Educational Broadband Service, or "EBS," for licenses issued to educational institutions and certain not-for-

profit entities such as NACEPF. The remaining portion of the 2.5 GHz band may be licensed to commercial enterprises and is referred to as BRS.

12. NACEPF is the licensee of certain spectrum channels in the 2.5 GHz band.

13. Commercial operators must purchase or lease particular spectrum groupings in a given market to provide wireless services that will be free from interference and otherwise appropriate for commercial operations. Licensed spectrum is finite within the 2.5 GHz band and the FCC has already licensed nearly all available EBS and BRS spectrum in each market. As a consequence, licensed spectrum rights are unique and have significant value to wireless commercial operators.

14. This case concerns the lease of spectrum rights by NACEPF to Lesseees pursuant to two written lease agreements.

**The Lease Agreements Between Lessees and NACEPF**

15. On May 31, 1991, Mitchell Communications, Corp. and NACEPF entered into an ITFS Excess Capacity Airtime Lease Agreement – Santa Rosa (the "Santa Rosa Lease"), which was assigned to Wireless Plus, Inc. on November 29, 1993, was further assigned to Wireless Plus of Santa Rosa, Inc. on September 2, 1994, and was later assigned to American Telecasting of Santa Rosa, Inc., now a wholly owned subsidiary of Sprint Nextel Corporation, for the lease of spectrum in the Santa Rosa, California market. A true and accurate copy of the Santa Rosa Lease is attached hereto as Exhibit A, and incorporated herein by reference.

16. On December 3, 1991, American Telecasting, Inc. and NACEPF entered into an ITFS Excess Capacity Airtime Lease Agreement – Bradenton, Florida (the "Bradenton Lease," which, together with the Santa Rosa Lease, are referred to as the "Lease Agreements") for the lease of spectrum in the Bradenton, Florida market. The Bradenton Lease was amended on April

21, 1994, May 3, 1997, and on May 30, 1997. A true and accurate copy of the Bradenton Lease is attached hereto as Exhibit B, and incorporated herein by reference.

**ROFRs—Rights of First Refusal—Are Granted to Lessees Under the Lease Agreement**

17. Each Lease Agreement contains the same language granting each Lessee "a right of first refusal on any competing proposals for lease agreements or transfers or assignments of the ITFS Channels received by [NACEPF] until twelve months after the expiration of the Renewal Term." Exhibit A, ¶ 1(C); Exhibit B, ¶ 1(C) The Lease Agreements further state:

> If any acceptable offer to lease or acquire the ITFS Channels is made to Lessor, Lessor shall give written notice to Lessee describing the person to whom the proposed lease or transfer is to be made, the fees, charges, rental or other consideration to be received for the lease or transfer, the terms thereof and generally the relevant other terms and conditions of the lease or transfer. Lessee shall have a period of thirty (30) days after its receipt of such notice from Lessor in which to elect, by giving written notice to Lessor, to lease or, if eligible, obtain any or all of the ITFS Channels for the same fees, charges, rental or other consideration for which Lessor proposed to lease or transfer to the third person.

Id. Thus, a Lessee has thirty (30) days after its receipt of written notice from NACEPF of the competing offer to exercise its ROFR.

18. In exercising its ROFR, Lessee must offer to match "the same fees, charges, rental or other consideration" as proposed in the competing offer. Exhibit A, ¶ 1(C); Exhibit B, ¶ 1(C). In doing so, Lessee must match any non-cash consideration included in the competing offer with cash. Specifically, the Lease Agreements provide:

> If the fees, charges, rental or consideration to be paid by such third person are to be in whole or in part in a form other than cash, the consideration to be paid by Lessee shall be in cash in an amount fairly equivalent to the fair value of the consideration payable by the third person and shall be so stated by Lessee as a sum certain in its notice of election. Id.

19. The Lease Agreements provide for arbitration as the mechanism for resolving disputes over whether the Lessee has offered adequate cash consideration to replace the non-cash consideration offered by the third party. It provides, in relevant part:

> If Lessor does not believe Lessee's stated offer is in an amount fairly equivalent to the fair value of the consideration payable by the third person and so notifies Lessee in writing within seven (7) days after Lessor's receipt of Lessee's written notice of election to so lease or purchase, Lessee may within five (5) days after its receipt of such notice from Lessor elect to refer such question for determination by an impartial arbitrator and the right of first refusal shall then be held open until five (5) days after Lessee is notified of such determination.

Exhibit A, ¶ 1(C); Exhibit B, ¶ 1(C).

20. The Lease Agreements provide that Lessee's ROFR terminates either by the lease or other transfer to Lessee as provided under the Lease Agreement or upon Lessee's unwillingness or failure to meet and accept such a bona fide offer pursuant to the times and procedures set forth in the Lease Agreement, provided the proposed competing transaction is consummated within 30 days after Lessee's ROFR has expired. Exhibit A, ¶ 1(C); Exhibit B, ¶ 1(C).

21. The lease term of the Santa Rosa Lease expired on August 13, 2007 and the lease term of the Bradenton Lease expired on October 27, 2007.

**Lessees Exercise Their ROFR Rights**

22. NACEPF sent each Lessee a Notice of Intent to Enter into Lease Agreement, dated November 6 and 7, 2007, respectively (the "ROFR Notices"), stating that NACEPF received what it deemed to be an acceptable offer from Clearwire Spectrum Holdings II, LLC ("Clearwire") to lease the spectrum channels, which are subject to Lessee's ROFRs. True and accurate copies of the ROFR Notices are attached hereto as Exhibit C, and incorporated herein by reference.

23. Each of the ROFR Notices state that the "fees, charges, rental and other consideration" contained in the Clearwire offer, "as well as the relevant and material terms and conditions therein," are contained in the proposed Individual Use Agreement ("IUA") covering the spectrum channels and the existing Master Royalty and Use Agreement ("MRUA"), both between NACEPF and Clearwire. The IUA and MRUA are also governed by a Master Use Royalty Agreement ("MRUA-1") between Clearwire, NACEPF and other parties. See Exhibit C.

24. By letters dated December 6, 2007, each Lessee notified NACEPF that it elected to exercise its ROFR with respect to the spectrum channels under the terms of its Lease Agreement with NACEPF (the "Election Letters"). True and accurate copies of the Election Letters are attached hereto as Exhibit D, and incorporated herein by reference.

25. In accordance with the requirement of the Lease Agreements that Lessee match any non-cash consideration with cash in an amount fairly equivalent to such non-cash consideration, the Lessee under the Santa Rosa Lease proposes to substitute the value of 17,824 shares of Clearwire Corporation Class A Common Stock, in lieu of the Equity Royalty, and $6,146,575 payable in monthly installments of $17,074, in lieu of the Access Right Royalties, to match the competing offer received by NACEPF for the Santa Rosa Channels. The Lessee under the Bradenton Lease proposes to substitute the value of 16,653 shares of Clearwire Corporation Class A Common Stock, in lieu of the Equity Royalty, and 5,612,809 payable in monthly installments of $15,591, in lieu of the Access Right Royalties, to match the competing offer received by NACEPF for the Bradenton Channels. Lessees' offers further specify that operation of Lessees' ROFR requires that the IUA be revised to take into account those provisions specific

to the identity of Clearwire or that cannot be interpreted without reference to the MRUA or MRUA-1 (as defined in the RORF Notices). See Exhibit D.

26. By letters dated December 13, 2007, NACEPF advised Lessees that it did not consider Lessees' Election Letters to constitute a proper or valid election of their ROFRs (the "December 13th Letters"). True and accurate copies of the December 13th Letters are attached hereto as Exhibit E, and incorporated herein by reference. Upon information and belief, NACEPF wants to deny Lessees their ROFRs to advance the economic interests of Clearwire, NACEPF's business partner.

27. NACEPF objected to Lessee's valuation of the Equity Royalty and Access Rights Royalties, claiming that Lessee is required to "meet all of the terms and conditions of the IUA and relevant provisions of the MRUA and MRUA-1 [agreements between NACEPF and Clearwire]" in order to properly exercise its ROFR. NACEPF's December 13th Letters contain an ultimatum: if Lessee does not match Clearwire's offer exactly, NACEPF will proceed to consummate the transactions contemplated in the Clearwire offer within seven days (or December 20, 2007). See Exhibit E.

28. On December 18, 2007, Lessees responded to NACEPF's December 13th Letters, and have demanded arbitration to resolve the dispute over financial terms, in accordance with the procedures set forth in the Lease Agreements (the "December 18th Letters"). True and correct copies of the December 18th Letters are attached hereto as Exhibit F, and incorporated herein by reference.

**NACEPF'S Stated Intention to Lease the Excess Spectrum to Clearwire**

29. NACEPF has failed and refused to acknowledge Lessees' demand for arbitration. Upon information and belief, NACEPF intends to proceed to consummate the competing

transactions contemplated in the Clearwire offer in contravention of Lessees' rights under the Lease Agreements.

30. Each Lease Agreement further provides Lessee the right to recover its costs and expenses, including reasonable attorneys' fees, incurred as a result of NACEPF's willful misconduct in refusing to perform its contractual obligations. See Exhibit A, ¶ 13, Exhibit B, ¶ 13.

**COUNT I**

**(Declaratory Judgment – Lessees' Exercise of their ROFR Rights are Proper and Effective)**

31. Lessees incorporate the allegations in paragraphs 1 through 30, as though fully set forth herein.

32. Lessees have properly exercised their ROFR rights by giving notice of their election in the Election Letters.

33. NACEPF claims that Lessees' exercise of their ROFR rights are ineffective and has demanded that Lessees unconditionally match all of the terms and conditions of the competing Clearwire offers, including the IUA and certain provisions of the MRUA and MRUA-1, in order to properly exercise Lessees' ROFR rights.

34. The express terms of the Lease Agreement do not require that Lessees unconditionally match all of the terms and conditions of a competing offer deemed acceptable by NACEPF, but rather only require that Lessees elect to obtain the lease or obtain the spectrum rights "for the same fees, charges, rental or other consideration" proposed by the third party.

35. Because Lessees have validly and properly elected to exercise their ROFR rights, and have elected to refer to arbitration the parties' disputes over the valuation of non-cash

consideration included in the Clearwire offers, NACEPF may not rightfully enter into the transactions with Clearwire described in the ROFR Notices.

36. An actual, justifiable controversy exists between Lessees and NACEPF concerning whether Lessees have properly and validly exercised their ROFR rights under the Lease Agreements and, therefore, whether NACEPF is prohibited from entering into the transactions with Clearwire contemplated under the Election Notices, until the questions concerning valuation of the non-cash consideration included in Clearwire's competing offers are resolved through arbitration and Lessees' ROFR rights are terminated in accordance with the provisions of the Lease Agreements.

## COUNT II

### (Injunctive Relief – Enjoin NACEPF from Consummating the Clearwire Transaction)

37. Lessees incorporate the allegations in paragraphs 1 through 36, as though fully set forth herein.

38. If the competing transactions with Clearwire are consummated, Lessees will suffer the irreparable loss of the ROFRs granted by NACEPF to Lessees under the Lease Agreements. Because the spectrum rights are neither fungible nor replaceable, the transfer of those assets would constitute irreparable harm to Lessees. The spectrum rights are unique by their nature and by the control exercised over them by the FCC. The only adequate remedy is injunctive relief to enjoin NACEPF from leasing the spectrum at issue to Clearwire. There is no other remedy to protect Lessees' access to the spectrum.

39. Lessees seek an injunction (a temporary restraining order and preliminary injunction) enjoining and restraining NACEPF from consummating the competing transactions with Clearwire described in the ROFR Notices, pending resolution of the questions concerning

valuation of the non-cash consideration included in Clearwire's competing offers through arbitration and resolution of Lessees' ROFR in accordance with the Lease Agreements.

40. There is no adequate remedy at law to compensate Lessees for the damage that Lessees will suffer if NACEPF's proposed lease transactions with Clearwire are consummated while Lessees' ROFRs are still in effect. Lessees will be irreparably harmed in the absence of the injunctive relief sought.

41. A substantial likelihood exists that Lessees will succeed on the merits of their claims against NACEPF.

42. The injury threatened to Lessees from the consummation of NACEPF's proposed lease transactions with Clearwire outweighs the harm the requested injunction may cause NACEPF.

43. Granting the requested injunctive relief will serve the public interest in enforcing contractual commitments between parties and preventing tortious conduct in the transacting of business.

**COUNT III**

**(Breach of Contract)**

44. Lessees incorporate the allegations in paragraphs 1 through 43, as though fully set forth herein.

45. NACEPF breached its obligations in the Lease Agreements by its failure and refusal to honor Lessees' ROFRs under the Lease Agreements and by its failure and refusal to honor Lessees' demands for arbitration to resolve the disputes with NACEPF over the valuation of non-cash consideration that Lessees must match in cash in exercising their ROFRs.

46. NACEPF will be in breach of its obligations under the Lease Agreements if it proceeds to consummate the proposed lease transactions with Clearwire, in contravention of Lessees' ROFRs under the Lease Agreements.

47. Lessees have complied with their obligations under the Lease Agreements.

48. Lessees have been damaged and harmed, and are continuing to be damaged and harmed, as a result of NACEPF's conduct and breach of its contractual obligations under the Lease Agreements.

49. As a result of NACEPF's breach of contract, Lessees are entitled to damages in excess of $75,000 in such amounts to be proven at trial.

**COUNT IV**

**(Specific Performance)**

50. Lessees incorporate the allegations in paragraphs 1 through 49, as though fully set forth herein.

51. Under the terms of each Lease Agreement, Lessee is entitled to elect to lease any or all of the Channels "for the same fees, charges, rental or other consideration" for which NACEPF proposes to lease or transfer to Clearwire. See Exhibit A, ¶ 1(C); Exhibit B, ¶ 1(C).

52. Lessees have validly elected to exercise their ROFRs, but NACEPF has failed and refused to recognize Lessees' elections as proper or valid.

53. Lessees have further validly elected their right to demand arbitration to resolve the parties' dispute over valuation of the non-cash consideration Lessees are required to match in cash in exercising their ROFRs, but NACEPF has violated and is continuing to violate its contractual obligations under the Lease Agreements by refusing to acknowledge Lessees' rights and by moving forward with consummation of the competing transactions with Clearwire.

54. Specific performance is appropriate as to NACEPF's contractual obligation to recognize Lessees' election to exercise their ROFRs and to proceed in accordance with the arbitration provisions under the Lease Agreements to resolve any disputed issues concerning valuation of the non-cash consideration Lessees are required to match in exercising their ROFRs.

WHEREFORE, Lessees pray that this Court enter judgment in their favor and against NACEPF:

(a) declaring that Lessees' exercise of their ROFRs is valid and effective, and declaring which of the terms and conditions of the Clearwire offer Lessees are required, under the Lease Agreement, to match;

(b) enjoining and restraining NACEPF (and its agents, servants, employees, and those persons in active concert or participation with NACEPF) from consummating the proposed lease transactions with Clearwire (or otherwise transferring or exchanging assets) described in the ROFR Notices while Lessees' ROFRs are still in effect;

(c) awarding Lessees compensatory damages according to the proof adduced at trial in an amount exceeding $75,000;

(d) causing specific performance of NACEPF's contractual obligations under the Lease Agreements to recognize Lessees' ROFR elections and to proceed in accordance with the arbitration provisions of the Lease Agreements;

(e) awarding Lessees their attorneys' fees, costs and expenses as provided in the Lease Agreements; and

(f) awarding Lessees such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

By: ________________________________
Jeffrey S. Brenner, Esq. (#4369)
NIXON PEABODY LLP
One Citizens Plaza, 5th Floor
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
jbrenner@nixonpeabody.com

and

Of Counsel:
Craig O'Dear (MO # 30167)
Elaine Drodge Koch (MO # 38366)
BRYAN CAVE LLP
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105
Tel: (816) 374-3200
Fax: (816) 374-3300
csodear@bryancave.com
edkoch@bryancave.com

COUNSEL FOR PLAINTIFFS

**VERIFICATION**

I, Neil Brown, state that the facts alleged in this Verified Complaint are true and correct to the best of my knowledge and information and, in my capacity as Director, Spectrum Development for Sprint Nextel Corporation, that I am authorized to verify this Complaint on behalf of Plaintiffs American Telecasting of Santa Rosa, Inc., and American Telecasting, Inc.

I declare under penalty of perjury that the foregoing is true and correct within the meaning of 28 U.S.C. § 1746.

Neil Brown
____________________________