December 18, 2007

**<u>VIA FACSIMILE (401-934-2240), FEDERAL EXPRESS AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>**

John Primeau, President
North American Catholic Educational
Programming Foundation, Inc.
2419 Hartford Avenue
Johnston, Rhode Island 02919-1719

***Re: Right of First Refusal Response pursuant to that certain ITFS Excess Capacity Airtime Lease Agreement between North American Catholic Educational Programming Foundation, Inc. ("NACEPF") and American Telecasting, Inc. ("ATI"), a wholly-owned subsidiary of Sprint Nextel Corporation, dated December 3, 1991, amended on April 21, 1994 and May 30, 1997 (the "Agreement"), with respect to the D1 through D4 channels (the "Channels") authorized to NACEPF under FCC call sign WLX724 in Bradenton, Florida.***

Dear John:

ATI is in receipt of NACEPF's letter dated December 13, 2007 in which you assert that ATI's exercise of its right of first refusal ("ROFR") under Section 1(C) of the Agreement is ineffective, and object to ATI's valuation of the Equity Royalty and Access Rights Royalties.

Your letter states that in order for ATI to effectively exercise its ROFR under the Agreement, ATI must "unconditionally agree[ ] to meet all the terms of the Clearwire Lease, including all of the terms of the IUA, and the relevant provisions of the MRUA and MRUA-1." This is not a correct statement of what is required under the Agreement. The Agreement does not, as you claim, require ATI to match "all material terms and conditions" of the Clearwire offer.

Rather, the Agreement permits ATI to elect "to lease...or obtain any or all of the ITFS Channels for the same fees, charges, rental or other consideration" for which NACEPF proposes to lease or transfer to Clearwire. The Agreement further permits ATI to match any non-cash consideration included in the competing offer in cash in an amount fairly equivalent to the fair value of such non-cash consideration. ATI's December 6th election notice proposes a fairly equivalent cash value for the non-cash consideration (*ie.*, the Equity Royalty and Access Right Royalties) included in the Clearwire offer, and clearly states that ATI elects to exercise its ROFR to lease the Channels on the terms set forth in the Clearwire offer, as set forth in the IUA, revised as appropriate to eliminate

provisions relating to the Equity Royalty and Access Right Royalties, and revised to take into account those provisions specific to the identity of Clearwire or that cannot be interpreted without reference to the MRUA or MRUA-1, to which ATI is not a party. Some of such provisions are specific and unique to the relationship between NACEPF and Clearwire, and are simply not applicable to ATI. Such terms may not be imposed on ATI to defeat its ROFR. More importantly, ATI is not required to match such provisions under the terms of the Agreement. Accordingly, ATI's election notice clearly qualifies as a valid and effective exercise of ATI's ROFR under the Agreement.

The Agreement further provides that if NACEPF disagrees that ATI's stated offer is in an amount fairly equivalent to the fair value of the consideration payable by Clearwire and so notifies ATI in writing within the required time period, ATI may elect to refer the question to arbitration by notifying NACEPF in writing within five (5) days after its receipt of such notice from NACEPF. ATI hereby elects to refer the question to arbitration. Enclosed herein is a copy of ATI's Demand for Arbitration, submitted to the American Arbitration Association on December 18, 2007. Under the terms of the Agreement, a timely election of arbitration preserves and extends ATI's ROFR until five (5) days after ATI is notified of the arbitrator's determination. NACEPF will be in breach of its obligations under the Agreement if it proceeds to consummate the lease transaction with Clearwire while ATI's ROFR is still in effect. ATI intends to take any and all actions necessary and appropriate to preserve its rights under the Agreement.

I look forward to working with you to resolve these issues. Should you have any questions regarding this letter, please do not hesitate to contact me.

Sincerely,

Neil Brown

cc: Robert Finch
Joseph P. Dubinski
Craig S. O'Dear

0190094/887777

# American Arbitration Association
# COMMERCIAL ARBITRATION RULES
## DEMAND FOR ARBITRATION

*MEDIATION is a nonbinding process. The mediator assists the parties in working out a solution that is acceptable to them. If you wish for the AAA to contact the other parties to ascertain whether they wish to mediate this patter, please check this box (there is no additional administrative fee for this service).* ☐

| TO: | | | Name of Representative (if known) | Name of Firm (if applicable) | |
|---|---|---|---|---|---|
| **North American Catholic Educational Programming Foundation, Inc.** | | | **John Primeau, President** | **Unknown** | |
| Address: **2419 Hartford Avenue** | | | Representative's Address: **same** | | |
| City: **Johnston** | State: **Rhode Island** | Zip Code: **02919-1719** | City: | State: | Zip Code: |
| Phone No.: **(401) 934-1100** | Fax No.: **(401) 934-2240** | | Phone No.: | Fax No.: | |

The named claimant, a party to an arbitration agreement contained in a written contract, dated **December 3, 1991** and providing for arbitration under the Commercial Arbitrating rules of the American Arbitration Association, hereby demands arbitration thereunder.

THE NATURE OF THE DISPUTE

**SEE ATTACHMENT**

THE CLAIM OR RELIEF SOUGHT (the Amount, if Any)

**SEE ATTACHMENT**

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND: **$4,500**

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE: Experience and/or expertise in the telecommunications industry and complex commercial litigation

DOES THIS DISPUTE ARISE OUT OF AN EMPLOYMENT RELATIONSHIP? ☐ Yes ☒ No

TYPES OF BUSINESS
**Claimants: Telecommunications**
**Respondent: Licensee of ITFS channels**

HEARING LOCALE REQUESTED: **Overland Park, Kansas** EST. TIME NEEDED FOR HEARINGS: **5-7 days**

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association at its **Dallas, Texas** office, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| Signature (may be signed by a representative) | | | Title | | |
|---|---|---|---|---|---|
| Craig S. O'Dear (signature) | | | Counsel | | |
| Name of Claimant(s) | | | Name of Representative | Name of Firm (if Applicable) | |
| **American Telecasting, Inc.** | | | **Craig S. O'Dear, Esq.** | **Bryan Cave LLP** | |
| Address (to Be Used in Connection with This Case) | | | Representative's Address: **3500 One Kansas City Place, 1200 Main Street** | | |
| City | State | Zip Code | City: **Kansas City** | State: **Missouri** | Zip Code: **64105** |
| Phone No. | Fax No. | | Phone No.: **(816) 374-3200** | Fax No.: **(816) 374-3300** | |

TO INSTITUTE PROCEEDINGS, PLEASE SEND TWO COPIES OF THIS DEMAND AND THE ARBITRATION AGREEMENT, WITH THE FILING FEE AS PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL DEMAND TO THE RESPONDENT.

**American Telecasting, Inc. v. North American Catholic Programming Foundation, Inc.**
**Commercial Arbitration Rules**
**Demand for Arbitration**

Claimant: American Telecasting, Inc., is a corporation duly organized and existing under the laws of the State of Delaware with executive offices in Reston, Virginia and operational offices in Overland Park, Kansas. Claimant is a wholly owned subsidiary of Sprint Nextel Corporation.

Respondent: North American Catholic Programming Foundation, Inc., is a corporation duly organized and existing under the laws of the State of Rhode Island, having its principal place of business at 2419 Hartford Avenue, Johnston, Rhode Island, 02919.

The Nature of the Dispute: Claimant and Respondent are parties to an ITFS Excess Capacity Airtime Lease Agreement – Bradenton, dated December 3, 1991 (the "Agreement"), for the lease of certain excess capacity spectrum rights in the Bradenton, Florida market. Respondent is the licensee of certain Educational Broadband Service ("EBS") channels authorized by the Federal Communications Commission. Claimant leased the excess EBS capacity from Respondent. The lease term of the Agreement expired on October 27, 2007. Under the Agreement, Respondent granted to Claimant a right of first refusal ("ROFR") with respect to competing proposals Respondent receives to lease the spectrum rights until twelve months following the termination of the lease. Respondent has given Claimant notice in which it represented it had received competing offers triggering Claimant's ROFR under the Agreement. Claimant elected to exercise its ROFR, and made an offer to Respondent that was fairly equivalent to the fair value of the consideration included in the competing offer. Respondent has indicated that it does not believe Claimant's stated offer is in an amount fairly equivalent to the fair value of the consideration in the competing offer. Claimant has initiated this arbitration proceeding to resolve the parties' dispute over whether Claimant's offer is in an amount fairly equivalent to the fair value of the consideration included in the competing offer, in accordance with the procedures set forth in the Agreement. The value of the offers is approximately $10,000,000.

**NOTE**: The arbitration clause providing for relief under the American Arbitration Association Commercial Arbitration Rules is contained within the Agreement. A true and correct copy of the arbitration clause in the Agreement is attached to this Demand for Arbitration as Exhibit A. Claimant believes that the American Arbitration Association Rules for Large, Complex Commercial Disputes should be applied in this case and will facilitate resolution of the case.

# EXHIBIT A

Bradenton D

WACEAF

# ITFS EXCESS CAPACITY AIRTIME LEASE AGREEMENT

**Bradenton, FL**

**November 14, 1991**

eighty (180) days prior to end of the Renewal Term. If Lessor and Lessee do not enter into a New Lease Agreement, Lessor grants Lessee a right of first refusal on any competing proposals for lease agreements or transfers or assignments of any part of the ITFS Channels received by Lessor until twelve (12) months after the expiration of the Renewal Term. If any acceptable offer to lease or acquire the ITFS Channels is made to Lessor, Lessor shall give written notice to Lessee describing the person to whom the proposed lease or transfer is to be made, the fees, charges, rental or other consideration to be received for the lease or transfer, the terms thereof and generally the relevant other terms and conditions of the lease or transfer. Lessee shall have a period of thirty (30) days after its receipt of such notice from Lessor in which to elect, by giving written notice to Lessor, to lease or, if eligible, obtain any or all of the ITFS Channels for the same fees, charges, rental or other consideration for which Lessor proposed to lease or transfer to the third person.

If the fees, charges, rental or consideration to be paid by such third person are to be in whole or in part in a form other than cash, the consideration to be paid by Lessee shall be in cash in an amount fairly equivalent to the fair value of the consideration payable by the third person and shall be so stated by Lessee as a sum certain in its notice of election.

If Lessor does not believe Lessee's stated offer is in an amount fairly equivalent to the fair value of the consideration

payable by the third person and so notifies Lessee in writing within seven (7) days after Lessor's receipt of Lessee's notice of election to so lease or purchase, Lessee may within five (5) days after its receipt of such notice from Lessor elect to refer such question for determination by an impartial arbitrator and the right of first refusal of Lessee shall then be held open until five (5) days after Lessee is notified of such determination. Such arbitrator shall be chosen either by agreement of Lessee and Lessor at the time such question arises, or, at the option of either party, by referring the question to the American Arbitration Association with instructions that the American Arbitration Association select a single arbitrator under a request from the parties for expedited and accelerated determination. The determination of the arbitrator chosen under either option contained in this subparagraph shall be final and binding upon Lessee and Lessor. The parties shall share equally in the costs and fees of the Arbitration.

In the event Lessee shall elect to exercise its right of first refusal, the lease agreement or other transfer or assignment shall be consummated within thirty (30) days of the latest of: (1) the day on which Lessor received notice of Lessee's election to exercise the right of first refusal; (2) the day upon which any question required to be determined by the arbitrator hereunder has been determined; or (3) the date of any FCC approval in the case of assignment or transfer; or at such other time as may be mutually agreed. The right of first refusal

Sprint

December 18, 2007

**VIA FACSIMILE (401-934-2240), FEDERAL EXPRESS AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

John Primeau, President
North American Catholic Educational
Programming Foundation, Inc.
2419 Hartford Avenue
Johnston, Rhode Island 02919-1719

***Re: Right of First Refusal Response pursuant to that certain ITFS Excess Capacity Airtime Lease Agreement between North American Catholic Educational Programming Foundation, Inc. ("NACEPF") and Mitchell Communications Corp., dated May 31, 1991, assigned to Wireless Plus, Inc. on November 29, 1993, and further assigned to Wireless Plus of Santa Rosa, Inc. on September 2, 1994, and later assigned to American Telecasting of Santa Rosa, Inc. ("ATSR"), a wholly-owned subsidiary of Sprint Nextel Corporation, as amended (the "Agreement"), with respect to the D1 through D4 channels (the "Channels") authorized to NACEPF under FCC call sign WLX642 in Santa Rosa, California.***

Dear John:

ATSR is in receipt of NACEPF's letter dated December 13, 2007 in which you assert that ATSR's exercise of its right of first refusal ("ROFR") under Section 1(C) of the Agreement is ineffective, and object to ATSR's valuation of the Equity Royalty and Access Rights Royalties.

Your letter states that in order for ATSR to effectively exercise its ROFR under the Agreement, ATSR must "unconditionally agree[ ] to meet all the terms of the Clearwire Lease, including all of the terms of the IUA, and the relevant provisions of the MRUA and MRUA-1." This is not a correct statement of what is required under the Agreement. The Agreement does not, as you claim, require ATSR to match "all material terms and conditions" of the Clearwire offer.

Rather, the Agreement permits ATSR to elect "to lease…or obtain any or all of the ITFS Channels for the same fees, charges, rental or other consideration" for which NACEPF proposes to lease or transfer to Clearwire. The Agreement further permits ATSR to match any non-cash consideration included in the competing offer in cash in an amount fairly equivalent to the fair value of such non-cash consideration. ATSR's December 6th election notice proposes a fairly equivalent cash value for the non-cash consideration (*ie.*, the Equity Royalty and Access Right Royalties) included in the

Clearwire offer, and clearly states that ATSR elects to exercise its ROFR to lease the Channels on the terms set forth in the Clearwire offer, as set forth in the IUA, revised as appropriate to eliminate provisions relating to the Equity Royalty and Access Right Royalties, and revised to take into account those provisions specific to the identity of Clearwire or that cannot be interpreted without reference to the MRUA or MRUA-1, to which ATSR is not a party. Some of such provisions are specific and unique to the relationship between NACEPF and Clearwire, and are simply not applicable to ATSR. Such terms may not be imposed on ATSR to defeat its ROFR. More importantly, ATSR is not required to match such provisions under the terms of the Agreement. Accordingly, ATSR's election notice clearly qualifies as a valid and effective exercise of ATSR's ROFR under the Agreement.

The Agreement further provides that if NACEPF disagrees that ATSR's stated offer is in an amount fairly equivalent to the fair value of the consideration payable by Clearwire and so notifies ATSR in writing within the required time period, ATSR may elect to refer the question to arbitration by notifying NACEPF in writing within five (5) days after its receipt of such notice from NACEPF. ATSR hereby elects to refer the question to arbitration. Enclosed herein is a copy of ATSR's Demand for Arbitration, submitted to the American Arbitration Association on December 18, 2007. Under the terms of the Agreement, a timely election of arbitration preserves and extends ATSR's ROFR until five (5) days after ATSR is notified of the arbitrator's determination. NACEPF will be in breach of its obligations under the Agreement if it proceeds to consummate the lease transaction with Clearwire while ATSR's ROFR is still in effect. ATSR intends to take any and all actions necessary and appropriate to preserve its rights under the Agreement.

I look forward to working with you to resolve these issues. Should you have any questions regarding this letter, please do not hesitate to contact me.

Sincerely,

Neil Brown

cc: Robert Finch
Joseph P. Dubinski
Craig S. O'Dear

American Arbitration Association
# COMMERCIAL ARBITRATION RULES
## DEMAND FOR ARBITRATION

*MEDIATION is a nonbinding process. The mediator assists the parties in working out a solution that is acceptable to them. If you wish for the AAA to contact the other parties to ascertain whether they wish to mediate this patter, please check this box (there is no additional administrative fee for this service).* ☐

| | | | | | |
|---|---|---|---|---|---|
| TO:<br>**North American Catholic Educational Programming Foundation, Inc.** | | | Name of Representative (if known)<br>**John Primeau, President** | Name of Firm (if applicable)<br>**Unknown** | |
| Address<br>**2419 Hartford Avenue** | | | Representative's Address<br>**same** | | |
| City<br>**Johnston** | State<br>**Rhode Island** | Zip Code<br>**02919-1719** | City | State | Zip Code |
| Phone No.<br>**(401) 934-1100** | Fax No.<br>**(401) 934-2240** | | Phone No. | Fax No. | |

The named claimant, a party to an arbitration agreement contained in a written contract, dated **May 31, 1991** and providing for arbitration under the Commercial Arbitrating rules of the American Arbitration Association, hereby demands arbitration thereunder.

THE NATURE OF THE DISPUTE
**SEE ATTACHMENT**

THE CLAIM OR RELIEF SOUGHT (the Amount, if Any)
**SEE ATTACHMENT**

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND: **$4,500**

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE: Experience and/or expertise in the telecommunications industry and complex commercial litigation

DOES THIS DISPUTE ARISE OUT OF AN EMPLOYMENT RELATIONSHIP? ☐ Yes ☒No

TYPES OF BUSINESS
**Claimants: Telecommunications**
**Respondent: Licensee of ITFS channels**

HEARING LOCALE REQUESTED: **Overland Park, Kansas** EST. TIME NEEDED FOR HEARINGS: **5-7 days**

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association at its **Dallas, Texas** office, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| | | | | | |
|---|---|---|---|---|---|
| Signature (may be signed by a representative)<br>Craig S. O'Dear (LEOt) | | | Title<br>Counsel | | |
| Name of Claimant(s)<br>**American Telecasting of Santa Rosa, Inc.** | | | Name of Representative<br>**Craig S. O'Dear, Esq.** | Name of Firm (if Applicable)<br>**Bryan Cave LLP** | |
| Address (to Be Used in Connection with This Case) | | | Representative's Address<br>**3500 One Kansas City Place, 1200 Main Street** | | |
| City | State | Zip Code | City<br>**Kansas City** | State<br>**Missouri** | Zip Code<br>**64105** |
| Phone No. | Fax No. | | Phone No.<br>**(816) 374-3200** | Fax No.<br>**(816) 374-3300** | |

TO INSTITUTE PROCEEDINGS, PLEASE SEND TWO COPIES OF THIS DEMAND AND THE ARBITRATION AGREEMENT, WITH THE FILING FEE AS PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL DEMAND TO THE RESPONDENT.

**American Telecasting of Santa Rosa, Inc. v. North American Catholic Programming Foundation, Inc.**
**Commercial Arbitration Rules**
**Demand for Arbitration**

Claimant: American Telecasting of Santa Rosa, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with executive offices in Reston, Virginia and operational offices in Overland Park, Kansas. Claimant is a wholly owned subsidiary of Sprint Nextel Corporation.

Respondent: North American Catholic Programming Foundation, Inc. is a corporation duly organized and existing under the laws of the State of Rhode Island, having its principal place of business at 2419 Hartford Avenue, Johnston, Rhode Island, 02919.

The Nature of the Dispute: Claimant and Respondent are parties to an ITFS Excess Capacity Airtime Lease Agreement – Santa Rosa, dated May 31, 1991 (the "Agreement"), for the lease of certain excess capacity spectrum rights in the Santa Rosa, California market. Respondent is the licensee of certain Educational Broadband Service ("EBS") channels authorized by the Federal Communications Commission. Claimant leased the excess EBS capacity from Respondent. The lease term of the Agreement expired on August 13, 2007. Under the Agreement, Respondent granted to Claimant a right of first refusal ("ROFR") with respect to competing proposals Respondent receives to lease the spectrum rights until twelve months following the termination of the lease. Respondent has given Claimant notice in which it represented it had received competing offers triggering Claimant's ROFR under the Agreement. Claimant elected to exercise its ROFR, and made an offer to Respondent that was fairly equivalent to the fair value of the consideration included in the competing offer. Respondent has indicated that it does not believe Claimant's stated offer is in an amount fairly equivalent to the fair value of the consideration in the competing offer. Claimant has initiated this arbitration proceeding to resolve the parties' dispute over whether Claimant's offer is in an amount fairly equivalent to the fair value of the consideration included in the competing offer, in accordance with the procedures set forth in the Agreement. The value of the offers is approximately $11,000,000.

**NOTE**: The arbitration clause providing for relief under the American Arbitration Association Commercial Arbitration Rules is contained within the Agreement. A true and correct copy of the arbitration clause in the Agreement is attached to this Demand for Arbitration as Exhibit A. Claimant believes that the American Arbitration Association Rules for Large, Complex Commercial Disputes should be applied in this case and will facilitate resolution of the case.

# EXHIBIT A

Santa Rosa 205766-fpts D

ITFS EXCESS CAPACITY AIRTIME LEASE AGREEMENT

**SANTA ROSA, CALIFORNIA**

**MAY 31, 1991**

NMEEPF

eighty (180) days prior to end of the Renewal Term. If Lessor and Lessee do not enter into a New Lease Agreement, Lessor grants Lessee a right of first refusal on any competing proposals for lease agreements or transfers or assignments of any part of the ITFS Channels received by Lessor until twelve (12) months after the expiration of the Renewal Term. If any acceptable offer to lease or acquire the ITFS Channels is made to Lessor, Lessor shall give written notice to Lessee describing the person to whom the proposed lease or transfer is to be made, the fees, charges, rental or other consideration to be received for the lease or transfer, the terms thereof and generally the relevant other terms and conditions of the lease or transfer. Lessee shall have a period of thirty (30) days after its receipt of such notice from Lessor in which to elect, by giving written notice to Lessor, to lease or, if eligible, obtain any or all of the ITFS Channels for the same fees, charges, rental or other consideration for which Lessor proposed to lease or transfer to the third person.

If the fees, charges, rental or consideration to be paid by such third person are to be in whole or in part in a form other than cash, the consideration to be paid by Lessee shall be in cash in an amount fairly equivalent to the fair value of the consideration payable by the third person and shall be so stated by Lessee as a sum certain in its notice of election.

If Lessor does not believe Lessee's stated offer is in an amount fairly equivalent to the fair value of the consideration

payable by the third person and so notifies Lessee in writing within seven (7) days after Lessor's receipt of Lessee's notice of election to so lease or purchase, Lessee may within five (5) days after its receipt of such notice from Lessor elect to refer such question for determination by an impartial arbitrator and the right of first refusal of Lessee shall then be held open until five (5) days after Lessee is notified of such determination. Such arbitrator shall be chosen either by agreement of Lessee and Lessor at the time such question arises, or, at the option of either party, by referring the question to the American Arbitration Association with instructions that the American Arbitration Association select a single arbitrator under a request from the parties for expedited and accelerated determination. The determination of the arbitrator chosen under either option contained in this subparagraph shall be final and binding upon Lessee and Lessor. The parties shall share equally in the costs and fees of the Arbitration.

In the event Lessee shall elect to exercise its right of first refusal, the lease agreement or other transfer or assignment shall be consummated within thirty (30) days of the latest of: (1) the day on which Lessor received notice of Lessee's election to exercise the right of first refusal; (2) the day upon which any question required to be determined by the arbitrator hereunder has been determined; or (3) the date of any FCC approval in the case of assignment or transfer; or at such other time as may be mutually agreed. The right of first refusal